| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------x<br>In re:<br><br>L&N TWINS PLACE LLC.<br><br><br>Debtor.<br>------------------------------------------------------------------x<br>PUKA CAPITAL FUNDING LLC,<br><br>        Plaintiff, v.<br><br><br>L&N TWINS PLACE LLC.<br><br>Defendant.<br>------------------------------------------------------------------x | NOT FOR PUBLICATION<br><br><br>Chapter 11<br>Case No. 17-22758 (rdd)<br><br><br><br><br><br><br>Adversary No. 17-08332 (shl) |

## POST-TRIAL DECISION

A P P E A R A N C E S

**Jeffrey A. Reich**
**Nicholas A. Pasalides**
Reich Reich & Reich, P.C.
*Counsel for the Debtor*
235 Main Street, Suite 450
White Plains, NY 10601

**Jonathan B. Nelson**
**Jessica K. Kastner**
**Solomon A. Frager**
Dorf & Nelson LLP
*Counsel for Puka Capital Funding LLC*
555 Theodore Fremd Avenue
Rye, NY 10580

**Joseph B Failla**
Voute, Lohrfink, Magro & McAndrew, LLP
*Counsel for Maria Balaj*
700 Post Road
Suite 237
Scarsdale, NY 10583

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the merits of the above captioned adversary proceeding, which consists of multiple proceedings removed from state court involving the Debtor L&N Twins Place LLC. Plaintiff Puka Capital Funding LLC ("Puka Capital") seeks to enforce the terms of a promissory note between it and the Debtor. One of the Debtor's two members, Maria Balaj, contests the validity of the promissory note and Puka Capital's right to interest of any kind. She also has asserted a claim for breach of fiduciary duty against the Debtor and David Balaj (Debtor's other member and Maria Balaj's ex-husband), who is also the son of Puka Capital's principals, Zef Balaj and Lina Balaj. Maria Balaj also has brought a direct cause of action against Zef Balaj, David Balaj, and Puka Capital for fraud. The Debtor has objected to Maria Balaj's claim filed in this bankruptcy case.

Trial in all these matters took place on February 22, 2019 and March 1, 2019. See Transcript of Hearings, dated Feb. 22, 2019 and March 1, 2019 [ECF Nos. 45-46]. At trial, the Court received the written direct testimony from three witnesses: Lina Balaj, David Balaj and Maria Balaj. *See, e.g.*, Hr'g Tr. 14:5-15:19 (discussing declaration of Lina Balaj). Each of these witnesses also provided additional live testimony at trial. *See, e.g., id.* 15:20-42:14 (Lina Balaj testimony on cross examination and redirect). In addition, the parties submitted documentary exhibits and agreed upon deposition testimony. *See* Hr'g Tr. of Feb. 22, 2019 at 6:21-15:6 (discussing parties' agreed upon exhibits 1 through 47); *id.* at 71:23-106:13 (reflecting additional exhibits 48 through 54).

After trial and for the reasons set forth below, the Court finds that Puka Capital is entitled to recover under the promissory note, the Debtor's objection to Maria Balaj's claim is sustained,

and Maria Balaj's fraud causes of action fail. This decision constitutes the Court's findings of fact and conclusions of law based on all of the evidence.

## BACKGROUND

### A. The Debtor and Purchase of the Property

The Debtor was formed on February 20, 2002 as a New York limited liability company. Exh. 36 (The Debtors' Operating Agreement); *see also* L&N Twins Place LLC Post-Trial Brief Regarding the Allegations of Breach of Fiduciary Duty ¶ 4 [ECF No. 52] (the "Debtor Brief"). At all relevant times, the Debtor had two fifty-percent members: Maria and David Balaj, who were married to each other when Debtor was formed. Decl. of David Balaj ¶ 3; Decl. of Maria Balaj ¶¶ 4, 20. David Balaj was also the Debtor's managing member. *See* Decl. of David Balaj ¶¶ 13, 15. The Debtor was formed to facilitate the purchase of real property at 2-4 Virginia Place, Pleasantville, NY. Decl. of David Balaj ¶¶ 12, 16. Comprised of six apartments and one duplex, the Virginia Place property eventually served both as the marital home of Maria and David Balaj and as a source of rental income for the Debtor. Hr'g Tr. of Feb. 22, 2019 at 144:10-14; Decl. of David Balaj ¶ 10.

Pursuant to the terms of Debtor's Operating Agreement, David Balaj was required to do what was necessary to acquire the Virginia Place property, including incurring debt if necessary. Exh 36. David Balaj believed that the only way to purchase the property would be to obtain a loan, but he was unsure whether the Debtor would get loan approval from a bank in time to purchase the property. *See* Decl. of David Balaj ¶ 11. So instead of relying on a loan from a bank, David Balaj's parents—Zef and Lina Balaj—offered to loan the Debtor the necessary funds through their company, Puka Capital. Decl. of Lina Balaj ¶¶ 4-5. On February 2, 2002, a portion of the purchase price, $86,000.00, was paid directly by Puka Capital as a down payment

2

on the Virginia Place property. Exh. 3 (Check issued by Puka Capital for the "contract deposit"). Puka Capital transferred the remaining balance of the purchase price to an account controlled by the Debtor, which was used to complete the purchase of the Virginia Place property on February 28, 2002. Exh. 16 (Puka Capital's February 2002 Bank Statement); (Exh. 5 (Check issued by the Debtor for the remainder of the purchase price). In total, Puka Capital loaned the Debtor $861,000.00 plus interest at the federal prime rate, and the loan was memorialized in a promissory note signed by David Balaj. Exh. 1 (the Promissory Note); Debtor Brief ¶ 10. The Promissory Note provided for yearly payments and a maturity date of February 28, 2007. *Id.*; Decl. of Lina Balaj ¶ 9; Hr'g Tr. of Feb. 22, 2019 at 35:1-9. It was notarized. Exh. 1.

Approximately two months after signing the Promissory Note, the Debtor obtained a loan for $600,000.00 from Hudson Valley Bank (the "HVB Loan"). *See* Decl. of David Balaj ¶ 18. The HVB Loan was secured by a mortgage against the Virginia Place property and carried a 6.625% per annum interest rate over a five-year term. Exh. 22 (Mortgage note for the Virginia Place property). The HVB Loan was also personally guaranteed by Maria and David Balaj. Exh 29 (Guarantee signed by David Balaj); Exh. 30 (Guarantee signed by Maria Balaj). After closing costs were deducted, the Debtor received $579,389.08 from the HVB Loan. Exh. 21 (listing the amount received by the Debtor under the HVB Loan). The remainder of the HVB Loan and an additional $7,953.92 were then used by the Debtor to pay down, but not pay in full, the outstanding Promissory Note with Puka Capital. Exh. 8 (Check issued by the Debtor to Puka Capital in the amount of $587,043); Exh. 13 (Letter from the Debtor to Puka Capital explaining the purpose of the check sent to Puka Capital); Decl. of Lina Balaj ¶ 16; Hr'g Tr. of Feb. 22, 2019 at 58:9-59:14. No payments on the Promissory Note were made after the pay down via the HVB Loan on April 30, 2002. Hr'g Tr. of Mar. 1, 2019 at 19:7-18, 39:5-12.

3

Despite the pay down on the Promissory Note, the Debtor had trouble meeting its obligations. In short, the Debtor could not afford to pay the HVB Loan and the Promissory Note at the same time. Decl. of David Balaj ¶¶ 20-21. As managing member, David Balaj prioritized paying the HVB Loan because the interest rate on the HVB Loan was greater than the Promissory Note and the HVB Loan was secured by the Virginia Place property. Decl. of David Balaj ¶ 21; Hr'g Tr. of Feb. 22, 2019 at 154:4-14. Indeed, the Debtor's Operating Agreement required David Balaj to prioritize paying down secured debt like the HVB Loan. Exh. 36. By the time the HVB Loan matured in April of 2007, the Debtor had insufficient liquidity to pay the outstanding balance. Decl. of David Balaj ¶ 22. As a result, the HVB Loan was converted into a line of credit (the "HVB Line") in the amount of $542,643.03 plus a variable interest rate of no less than 5.75% (together with the HVB Loan, the "HVB Obligation"). Decl. of David Balaj ¶ 22. But as Debtor remained unable to timely meet its obligations under both the Promissory Note and the HVB Obligation, David Balaj continued to prioritize the Debtor's secured obligation under the HVB Line. Decl. of David Balaj ¶ 23; Hr'g Tr. of Feb. 22, 2019 at 154:4-22. The HVB Obligation was paid off in January of 2010. Hr'g Tr. of Mar. 1, 2019 at 45:15-19.

Maria and David Balaj's relationship eventually deteriorated, and David Balaj filed for divorce in October of 2009. Decl. of David Balaj ¶ 26. That proceeding was highly contested between the parties. *Id*. On April 14, 2010, the state court issued a restraining order against David Balaj, which granted Maria Balaj "the exclusive use and occupancy of the Property and also tasked her with collecting the rents from the tenants and using them to pay the Properties carrying costs." *Id*.; *see also* Hr'g Tr. of Feb. 22, 2019 at 154:23-155:12. From the time the restraining order was issued until the Debtor filed for bankruptcy, Maria Balaj was essentially in control of the Debtor. *See* Hr'g Tr. of Feb. 22, 2019 at 155:10-12 (David Balaj testifying that the

4

restraining order "hindered every . . . possibility to communicate with any of the tenants or the area or maintain the property"). Maria and David Balaj's divorce became final sometime in the summer of 2013. Hr'g Tr. of Feb. 22, 2019 at 143:6-16.

The Debtor's financial problems continued after Maria Balaj took control of the Property under the restraining order. As noted above, no payments were made under the Promissory Note during this period, even though the HVB Obligation was paid in 2010. Maria Balaj also failed to pay real estate taxes on the Virginia Place property even though she was receiving the rents under the restraining order issued by the state court. Decl. of David Balaj ¶ 28. But Maria Balaj contends that that the Puka Capital loan was forgiven as a "gift." Decl. of Maria Balaj ¶¶ 27-42; Hr'g Tr. of Feb. 22, 2019 at 55:25-56:11. This claim is contested by Puka Capital and David Balaj. Decl. of Lina Balaj ¶¶ 17, 21; Decl. of David Balaj ¶ 25; Hr'g Tr. of Mar. 1, 2019 at 48:21-23. Maria Balaj also contends that she was unaware of the existence of the Promissory Note. See Decl. of Maria Balaj ¶ 46.

## B. Proceedings Before This and Other Courts

Well before this bankruptcy case was ever filed, the parties had been litigating various issue in state court. Puka Capital filed a motion for summary judgment in lieu of complaint in Supreme Court, Bronx County on August 24, 2011, based on the Debtor's failure to make payments under the Promissory Note. *See* Removal Order at Exh. B [ECF No. 1]. After various procedural maneuvers before the Bronx County court, Maria Balaj submitted a filing deemed to be answer in the state court on behalf of the Debtor. See Removal Order at Exh. D. In that filing, she asserted that she had no knowledge of the Promissory Note and that certain documents that she had discovered suggested that the Promissory Note was actually created on January 17, 2010, not February 28, 2002, as was claimed by Puka Capital. Removal Order at Exhs. D, E.

5

Maria Balaj subsequently filed her own separate action in Supreme Court, Westchester County on April 23, 2013, against Zef Balaj, David Balaj, and Puka Capital, alleging fraud by all the defendants, to which responsive pleadings and counterclaims were filed. *See* Exhs. 9-12. Both cases were consolidated and transferred to the Supreme Court in Bronx County. *See* Removal Order at Exh. G.

Given all the state court litigation and its outstanding tax debts, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 23, 2017. *See* Hr'g Tr. of Mar. 1, 2019 at 48:23-49-2. Puka Capital filed a proof of claim for money owed on the Promissory Note. *See* Claim No. 4. Maria Balaj also filed a proof of claim in the bankruptcy for breach of fiduciary duty and self-dealing based on the actions of David Balaj, including, most notably, his failure to pay off the Promissory Note, while also arguing that the Promissory Note was fraudulent. *See* Claim No. 8. The state court lawsuits were removed and transferred to this Court as part of this bankruptcy. *See* Removal Order. Objections and other responsive pleading as to both Puka Capital's claim and Maria Balaj's claim were filed by the parties. *See* ECF Nos. 73-76, 78, 84-85.

All of the above referenced proceedings, claims and disputes were tried together before this Court on February 22, 2019 and March 1, 2019. After the close of evidence, the Court ruled against Maria Balaj on her direct fraud causes of action in a bench ruling. Hr'g Tr. of Mar. 1, 2019 at 49:15-52:8. Thereafter, the parties agreed that there were four issues left for the court to decide: (1) whether the Promissory Note is valid and, if so, whether it was forgiven; (2) whether Puka Capital is entitled to pre-petition interest under the Promissory Note; (3) whether Puka Capital is entitled to post-petition interest; and (4) whether David Balaj breached his fiduciary

6

duties to the Debtor.[1]  *See* ECF No. 44.  The parties submitted post-trial briefing on the interest and fiduciary duty issues on May 15, 2019.  *See* ECF Nos. 48, 50, 52.

During the pendency of the Debtor's bankruptcy case, the Virginia Place property was sold for $1,490,000.00, resulting in a profit of $629,000.00 on Debtor's initial investment.  *See* Exh. 35; Debtor Brief ¶ 26.

## DISCUSSION

### I. The Promissory Note is Valid and Enforceable

The Court begins by addressing the central dispute in this case: whether Puka Capital can recover under the Promissory Note.  There has been no argument about whether the Promissory Note meets all the specific substantive requirements for a valid negotiable instrument under New York law.  *See* N.Y. U.C.C. Law § 3-104(1)(a)-(d) (McKinney 2019).  Instead, Maria Balaj argues more broadly that the Promissory Note is a fabrication created on or about January 17, 2010, not February 28, 2002, and is therefore unenforceable.  In the alternative, she argues that the Promissory Note was forgiven by Zef Balaj, Lina Balaj, and Puka Capital.

Under New York law, "a certificate of acknowledgment attached to an instrument such as a deed raises a presumption of due execution, which presumption, in a case such as this, can be rebutted only after being weighed against any evidence adduced to show that the subject instrument was not duly executed."  *Beshara v. Beshara*, 51 A.D.3d 837, 838, 858 N.Y.S.2d 351, 352 (N.Y. App. Div. 2d Dept. 2008) (quoting *Son Fong Lum v. Antonelli*, 102 A.D.2d 258, 260-61, 476 N.Y.S.2d 921, 923 (N.Y. App. Div. 2d Dept. 1984)).  The testimony of interested parties is not enough to overcome the presumption of due execution.  *Id.* (citing *Albany Cnty. Sav. Bank*

---

[1]    The parties frame the remaining issues as four distinct matters.  But as two of the issues relate to Puka Capital's entitlement to interest, the Court will discuss those related matters together.

7

*v. McCarty*, 149 N.Y. 71, 80 (N.Y. 1896)). Instead, a party contesting the validity of the instrument must demonstrate facts calling into question the instrument's validity by clear and convincing evidence. *Id.* (requiring that the evidence shown against validity of an instrument be "a moral certainty"). Evidence useful for this inquiry can include the testimony of the notary that purported to witness the signing of the instrument. *See Kitovas v. Megaris*, 133 A.D.3d 720, 721-22, 20 N.Y.S.3d 393, 394 (N.Y. App. Div. 2d Dept. 2015); *see also John Deere Ins. Co. v. GBE/Alasia Corp.*, 57 A.D.3d 620, 621-22, 869 N.Y.S.2d 198, 200 (N.Y. App. Div. 2d Dept. 2008) (suggesting that the testimony of a handwriting expert could have established that the signature on an instrument was forged).

The overwhelming credible evidence in this record supports the validity of the Promissory Note. The presumption of validity applies here because the Promissory Note was duly notarized. Exh. 1 (contains the signature of a notary named Lisa Manning). There has been no evidence submitted to indicate that the Promissory Note was not signed by David Balaj, that Ms. Manning was not actually present at the time the Promissory Pote was signed, or that Ms. Manning was not a notary public at the time the Promissory Note was executed. The most Maria Balaj offered at the trial is that the Promissory Note "did not exist in 2002." Hr'g Tr. of Feb. 22, 2019 at 64:6-8. But the Court finds her testimony to be unreliable and self-serving; the Court further concludes that her testimony is easily outweighed by the remainder of the evidence of the Promissory Note's validity. *See Osborne v. Zornberg*, 16 A.D.3d 643, 644-45, 792 N.Y.S.2d 183, 184-85 (N.Y. App. Div. 2d Dept. 2005).

The Court also rejects Maria Balaj's contention that the Debtor's obligations under the Promissory Note were forgiven by Zef Balaj, Lina Balaj, and Puka Capital. Considering all the evidence in the record, including the live testimony of the witnesses, the Court finds that her

8

argument is not supported by credible evidence. More specifically, the Court finds that the credibility of Maria Balaj's position is severely undermined by the cross examination of Maria Balaj by Puka Capital's counsel. *See* Hr'g Tr. of Feb. 22, 2019 at 95:3-106:12 (comparing purported written forgiveness with other documents between the same parties). Thus, the Court concludes that there was no written forgiveness of the Promissory Note and further notes that any oral forgiveness of such an obligation would be invalid under New York law. *See In re Estate of Carr*, 99 A.D.2d 390, 393, 473 N.Y.S.2d 179, 181 (N.Y. App. Div. 1st Dept. 1984). For all these reasons, the Court concludes that the Promissory Note is valid and enforceable against the Debtor.

## II.    Puka Capital is Entitled to the Entirety of Interest it Seeks

Puka Capital seeks interest on the Promissory Note for two separate time periods. First, Puka Capital seeks interest on the Promissory Note that accrued from the date the loan matured on February 28, 2007 until the date this Bankruptcy was filed on. Puka Capital Brief at 3-5. Second, Puka Capital seeks interest after the filing of the Bankruptcy to date under the Promissory Note's default rate of six (6) percent. Puka Capital Brief at 2-3. As the standards governing the entitlement to interest for those two time periods are different, the Court addresses the issues separately.

### A.    Puka Capital Is Entitled to Pre-Petition Interest on the Promissory Note

Maria Balaj argues that Puka Capital should be denied pre-petition interest because Puka Capital failed to take collection action earlier. More specifically, Maria Balaj argues that Puka Capital's failure to immediately sue to recover under the terms of the Promissory Note is akin to a forfeiture that would reduce the interest owed to Puka Capital. *See Post-Trial Brief of Maria Balaj* at 5 [ECF No. 50] (the "Maria Brief") ("Given Puka[] [Capital's] deep ties to [David

Balaj], they allowed interest to accrue unspoken from 2002 to 2011, nine years to their advantage.  At the very least, the equitable solution[] is to forego interest before filing of summary judgment in 2011."); Hr'g Tr. of Mar. 1, 2019 at 6:17-18:12.  The Court disagrees.

Maria Balaj fails to cite statutory authority or case law that would support the tolling of interest under the Promissory Note.  *See* Maria Brief at 12-13.  Although Maria Balaj discussed the tolling of interest under New York law in certain foreclosure cases, those cases are distinguishable.  Hr'g Tr. of Mar. 1, 2019 at 18:5-12.  All those cases involve inequitable conduct after the commencement of a case.  *See, e.g., Dayan v. York*, 51 A.D.3d 964, 965-66, 859 N.Y.S.2d 673, 674-75 (N.Y. App. Div. 2d Dept. 2008) (denying secured creditor post-petition interest on the mortgage where the secured creditor failed to seek a judgment of foreclosure within seven years of the case being initially filed and where the property had still not been sold for another seven years after that).  The Court has not been presented with evidence that would support a finding of misconduct after this case was filed.  Indeed, Maria Balaj's briefing focuses on Puka Capital's failure to bring its state court collection action sooner.  *See* Maria Brief at 12-13.  Nor has Maria Balaj identified any authority or rationale for applying the principles in these foreclosure cases for the present circumstances.

Even if this Court were to consider Maria Balaj's argument as one seeking to invoke the laches defense—as Puka Capital does (*see* Puka Capital Brief at 3-5)—her argument to seek tolling of interest here would still fail.  "Laches is an equitable doctrine based on fairness." *Cont. Cas. Co. v. Emp'rs. Ins. Co. of Wausau*, 60 A.D.3d 128, 137, 871 N.Y.S.2d 48, 55 (N.Y. App. Div. 1st Dept. 2008).  Where there has been lengthy neglect or omission to assert a right with resulting prejudice to an adverse party, laches applies.  *See Saratoga Cnty. Chamber of Commerce v. Pataki*, 100 N.Y.2d 801, 816 (2003).  Mere delay without a showing of prejudice to

10

the adverse party is insufficient to sustain a laches defense. *See Estate of Linker v. Martin*, 23 A.D.3d 186, 189, 803 N.Y.S.2d 534, 537 (N.Y. App. Div. 1st Dept. 2005). Prejudice typically requires an "injury, change of position, intervention of equities, loss of evidence, or other disadvantage resulting from such delay." *Id.* (citing *Skrodelis v. Norbergs*, 272 A.D.3d 316, 317, 707 N.Y.S.2d 197, 198-99 (N.Y. App. Div. 2d Dept. 2002)).

Both the law and the facts would require a rejection of laches as a defense here for myriad reasons.

First, laches is an affirmative defense that must be pled and proved by the party asserting it. *See* Fed. R. Civ. P. 8(c)(1) (listing laches as a defense that must be raised in an answer to a complaint); *Karlen v. N.Y. Univ.*, 464 F. Supp. 704, 708 (S.D.N.Y. 1979) ("The defense of laches is an affirmative defense under [Rule] 8(c) and properly should be raised in the defendant's answer . . . ."); *see also Dreikausen v. Zoning Bd. of Appeals*, 98 N.Y.2d 165, 173, n.4 (N.Y. 2002) ("Laches must be pleaded and proved by one who urges it.") (citation omitted). The Court does not find an assertion of laches in any of the state court pleadings filed by Maria Balaj or in her proof of claim filed here.

Second, Maria Balaj has failed to prove that inequitable conduct occurred. It is true that the Promissory Note continued to accrue interest for years starting in 2002. While interest was accruing, however, that is because the Debtor was paying off its higher cost secured debt under the HVB Obligation rather than its less expensive unsecured debt under the Promissory Note. This advanced rather than harmed the Debtor's interests. There is also no evidence that the purported delay in bringing Puka Capital's case made the Debtor (or Maria Balaj) incapable of defending Puka Capital's claims under the Promissory Note. *See Reif v. Nagy*, 2019 WL

11

2931960, at *15 (N.Y. App. Div. 1st Dept. Jul. 9, 2019); *Sparkling Waters Lakefront Assn., Inc. v. Shaw*, 42 A.D.3d 801, 803, 841 N.Y.S.2d 146, 149 (N.Y. App. Div. 3d Dept. 2007).

Third, Puka Capital's action to recover under the Promissory Note is an action at law. *See Kahn v. N.Y. Times Co.*, 122 A.D.2d 655, 663, 503 N.Y.S.2d 561, 567 (N.Y. App. Div. 1st Dept. 1986). Generally, laches is inapplicable to an action at law brought within the statute of limitations, such as for the recovery for damages under a promissory note. *Id.*; *Cadlerock, L.L.C. v. Renner,* 72 A.D.3d 454, 898 N.Y.S.2d 127, 128 (N.Y. App. Div. 2d Dept. 2010). It is uncontested that this case was timely brought under the statute of limitations, thus making laches unavailable. *See* N.Y. C.P.L.R. 213 (McKinney) (dictating that causes of action for breach of contract must be brought within six years).

Finally, to the extent that Maria Balaj asks the Court to apply some other equitable power, including the Court's inherent equitable powers, the Court declines to do so. While bankruptcy courts are courts of equity, *see, e.g.*, 11 U.S.C. 105(a), the Court finds nothing inequitable in the actions taken before or during this case by any party, including Puka Capital. *See Law v. Siegel*, 134 S. Ct. 1188 (2014) (noting limitations in equitable powers of the bankruptcy court); *see also Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136, n.4 (2d Cir. 1994).

### B. Puka Capital Is Entitled to Post-Petition Interest

As a general matter, unsecured creditors are not entitled to post-petition interest as part of their claims in bankruptcy. *See* 11 U.S.C. 502(b)(2) (forbidding claims for unmatured interest). Section 502(b)(2) codifies the longstanding view that post-petition interest is disallowed because the delay of a case is "a delay necessitated by law if the courts are to properly preserve the estate for the benefit of all involved." *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156,

163 (1946). But there is an exception to this general rule where there is a return to equity in a bankruptcy case of a solvent debtor. The thinking behind this exception is that "creditors should receive interest [in such circumstances] as compensation for the delay in the bankruptcy process." *In re General Growth Props.*, 451 B.R. 323, 326 (Bankr. S.D.N.Y. 2011); *see also* 4 Collier on Bankruptcy ¶ 502.03[3][c] (16th ed. 2018). The Second Circuit has long recognized this exception. *See Ruskin v. Griffiths*, 269 F.2d 827, 830-31 (2d Cir. 1959).

Given the facts of this case, the Court agrees that post-petition interest on Puka Capital's claim is appropriate at the contract default rate of six (6) percent. Debtor's main case and this adversary proceeding have been ongoing since 2017, and the state court actions were first brought in 2011. At all relevant times, Debtor has been solvent. Hr'g Tr. of Mar. 1, 2019 at 30:10-25. Permitting post-petition interest in this case is squarely in line with the policy reasons governing the exceptions to the prohibition on receiving post-petition interest. *See* 4 Collier on Bankruptcy ¶ 502.03[3][c].

Maria Balaj's arguments to the contrary are unavailing. Maria Balaj relies upon Section 506(b) to argue that Puka Capital is not entitled to post-petition interest. *See* Maria Brief at 11. But her reliance is misplaced. Section 506 applies solely to a determination of secured status and the legal entitlements of parties that hold secured claims. *See* 11 U.S.C. § 506. As Puka Capital is not a secured creditor, Section 506 does not apply.

Moreover, to the extent that Maria Balaj argues that it would be inequitable to grant Puka Capital post-petition interest, the Court disagrees. It is undisputed that even if Puka Capital receives interest in this case, Maria and David Balaj will still receive a distribution as equity holders of the Debtor. *See* Maria Brief at 10 ("Should Puka[] [Capital's] claim (4-1) be paid, it would consume more than half the [remaining assets of the estate]."). Granting Puka Capital

13

post-petition interest on their claim would not significantly alter that calculation, as post-petition was calculated to be $37,555.20 as of the first day of trial in this case, so the equities firmly weigh in favor of awarding post-petition interest.  Exh. 46.

Maria Balaj has not argued for a specific rate or method of calculation for post-petition interest.  *See* Maria Brief at 11-12.  Courts have differing views about the appropriate rate of post-petition interest, with various courts looking to the state court judgment rate, the contract rate, or the federal judgment rate.  4 Collier on Bankruptcy ¶ 502.03[3][c] (discussing the contrasting rationales in applying certain interest rates).  Given all the facts here including the return to equity, the Court concludes that the contractual rate is appropriate, particularly given that neither the Debtor nor Maria Balaj has argued for a different rate.  *See In re Beck*, 128 B.R. 571 (Bankr. E.D. Okla. 1991) ("[I]f a contract existed between the parties pre-Petition or post-Petition which established a rate of interest on any unpaid but payable amount, the rate established in the contract shall be applied.").  Accordingly, the Court awards Puka Capital post-petition interest at the rate of six (6) percent.

### III.    David Balaj Did Not Breach His Fiduciary Duties to the Debtor or its Members

The last remaining issue in this case is Maria Balaj's claim against David Balaj for breach of fiduciary duty.  Maria Balaj argues that by executing the Promissory Note and allowing interest to accrue on it to date, David Balaj breached his fiduciary duty as managing member to the Debtor and her.  *See, e.g.,* Maria Brief at 7.  Once again, the Court disagrees.

Under New York law, the following elements must be shown in order to recover damages for a breach of fiduciary duty: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.)*, 499 B.R. 276, 289 (S.D.N.Y. 2013) (quoting *Rut v. Young*

14

*Adult Inst., Inc.*, 74 A.D.3d 776, 777, 901 N.Y.S.2d 715, 717 (N.Y. App. Div. 2d Dept. 2010) (citations omitted)). Although breach of fiduciary duty can at times be a nebulous concept, it is most commonly considered to encompass the duty of care and the duty of loyalty. *See Norlin Corp. v. Rooncer, Pace, Inc.*, 744 F.2d 255, 264 (2d Cir. 1984).

The duty of care requires that a fiduciary act with "the care that a reasonably prudent person in a similar position would use under similar circumstances." *Id*. The duty of care does not exist in a vacuum, however, and must be considered in conjunction with the business judgement rule. *Id*. The business judgement rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Id.* (citing *Auerbach v. Bennett*, 47 N.Y.2d 619, 629 (1979)). The business judgment rule protects fiduciaries such as members of an LLC where that member performs their duties "in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." *Nathanson v. Nathanson*, 20 A.D.3d 403, 404, 799 N.Y.S.2d 83, 84-85 (N.Y. App Div. 2d Dept. 2005) (citing N.Y. Ltd. Liab. Co. Law § 409(a)).

The duty of loyalty, on the other hand, prohibits self-dealing or engaging in transactions where one fiduciary receives a benefit that others do not. *See Norlin*, 774 F.2d at 264; *Marx v. Akers*, 88 N.Y.2d 189, 202 (N.Y. 1996) ("[Fiduciaries] are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to [others] generally."). The duty of loyalty exists to prohibit fiduciaries from assuming or engaging in "the promotion of personal interests which are incompatible with the superior interests of their [business entity]." *In re Perry H. Hoplik & Sons*, 499 B.R. at 289 (quoting *Foley v. D'Agostino*, 21 A.D.2d 60, 66, 248 N.Y.S.2d 121, 128

15

(N.Y. App. Div. 1st Dept. 1964)). "Once a *prima facie* showing is made that [fiduciaries] have a self-interest in a particular [] transaction, the burden shifts to them to demonstrate that the transaction is fair and serves the best interests . . ." of the entity. *Norlin*, 744 F.2d at 264.

Based on the evidence in the record, the Debtor's objection to Maria Balaj's breach of fiduciary duty claim must be sustained. There are two relevant time periods subject to inquiry before this Court: (1) the time of the Debtor's formation until the HVB Obligation was paid off in 2010; and (2) the time after the HVB Obligation was paid off.

As to the first time period, there can be no breach of the duty of care. The Operating Agreement provided that David Balaj, the managing member, could take "any and all actions" he deemed necessary to acquire the Virginia Place property. Exh. 36. That authority included the power "to execute and deliver . . . instruments" for that purpose. *Id.* The Operating Agreement also provided that secured debts like the HVB Obligation must be paid before unsecured debts. *Id.* Consistent with these dictates, David Balaj decided to issue the Promissory Note, subsequently take out the HVB Loan, and prioritize payment of the HVB Obligation over the Promissory Note. All these actions were all expressly authorized in and consistent with the Operating Agreement, thus satisfying his duty of care and the business judgment rule. *See Zuckerbrod v. 355 Co., LLC*, 113 A.D.3d 675, 676, 979 N.Y.S.2d 119, 120-21 (N.Y. App. Div. 2d Dept. 2014) (holding defendant made a *prima facie* showing of good faith by establishing that revenue was withheld in order to make improvements or repairs on the businesses' properties).

David Balaj's actions, or lack thereof, are on more tenuous ground for the second time period. Once the HVB Obligation was paid off in January of 2010, David Balaj's stated reasoning for not making any payments to Puka Capital under the Promissory Note would appear to disappear. *See* Decl. of David Balaj ¶¶ 21-23. It is arguable that payments under the

16

Promissory Note should have begun at that point. But the problem with Maria Balaj's claim for this period is evidence. In short, there is nothing in the record to indicate what was done with the rents collected from January through April of 2010. Maria Balaj's counsel did not seek to elicit testimony from David Balaj on this subject nor did she present any other evidence on this issue. Thus, the Court has no way to know how the rent funds collected during their period were used; the uses could conceivably include appropriate expenditures such as maintenance or inappropriate uses entirely unrelated to the Property. Given the lack of evidence as to what David Balaj did or did not do during this four month period, Maria Balaj has not satisfied her burden to establish either misconduct by David Balaj for this time period or any damages caused by the misconduct. *See Mobarak v. Mowad*, 117 A.D.3d 998, 999-1000, 986 N.Y.S.2d 539, 541 (N.Y. App. Div. 2d Dept. 2014) ("Here, the plaintiff failed to produce any evidence to substantiate his allegations of fraud, bad faith, or breach of fiduciary duty in connection with [the defendants' actions].").[2]

Finally, Maria Balaj's claims for breaches of the duty of loyalty for both time periods fail because there is nothing in the record to indicate self-dealing or other impermissible conduct by David Balaj. There is nothing to indicate that David Balaj was on both sides of the transaction when he issued the Promissory Note. *See In re Rothko*, 43 N.Y.2d 305, 319 (N.Y. 1977). Nor is there anything in the record to suggest that David Balaj has received a benefit that Maria Balaj did not. *See Marx*, 88 N.Y.2d at 202. If the facts show anything, they illustrate the wisdom of the familiar warning about the risks of doing business with family. *See* Maria Brief at 5

---

[2] Maria Balaj complains about David Balaj's failure to pay down of the Promissory Note. The Court notes that another adversary proceeding has been filed regarding Maria Balaj's own alleged failure to make various payments, including property taxes, during her tenure managing the Property. The merits of that adversary proceeding are for another day. But after years of extensive litigation, the Court encourages all parties to seek a final resolution of all their remaining disputes to bring much needed closure to their lives and this bankruptcy case.

17

(characterizing these proceedings as "another battle in David Balaj and Maria's marital wars");

*see also Amundson v. Slaton (In re Slaton)*, 469 B.R. 814, 820 (Bankr. W.D. Wis. 2012) ("As business advisers routinely note, it is dangerous to go into business with family or friends because the relationships rarely survive if there is a falling out."). Accordingly, Maria Balaj's fiduciary duty claims fail *in toto* and the Debtors' objection to claim number 8 is sustained.[3]

---

[3] Two motions in limine were filed before trial that sought to exclude evidence challenging the validity of the Promissory Note and to exclude introduction of a purported second version of the Debtor's Operating Agreement. *See* Memorandum in Support of Plaintiff's Motion in Limine to Preclude Certain Testimony and Evidence at Trial, dated Feb. 22, 2019 [ECF No. 33] (seeking, *inter alia*, to preclude Debtor and Maria Balaj from challenging the validity of the Promissory Note and from introducing a second version of the Debtor's Operating Agreement); Motion in Limine of Debtor L&N Twins Place LLC, dated Feb. 23, 2019 [ECF No. 36] (seeking to preclude introduction of second version of Operating Agreement). Both those motions were opposed by Maria Balaj. *See* Affirmation in Opposition to Motion in Limine by Puka Capital Funding, LLC and L&N Twins Place, LLC, dated Feb. 19, 2019 (submitted by Maria Balaj) [EFC No. 38].

At trial, the Court excluded the second version of the Operating Agreement for a variety of reasons, many of which were consistent with the arguments contained in the motions in limine. See Hr'g Tr. Feb. 22, 2019 at 113:24-131:15 (excluding the alternative version of the Operating Agreement that was marked for identification as Exhibit 55). As today's decision upholds the validity of the Promissory Note based on all the evidence in the record, the decision moots the remainder of the relief sought by the motions in limine.

**CONCLUSION**

For all of the reasons discussed above, Puka Capital is entitled to recover under the Promissory Note as set forth in Claim Number 4.[4]  Maria Balaj's direct fraud causes of action are dismissed, and the Court sustains the Debtor's objection to Claim Number 8, which is expunged.

Puka Capital is to settle an order on seven day's notice consistent with this Decision and the Court's ruling at trial on the merits of Maria Balaj's claims.  The proposed order must be submitted by filing a notice of the proposed order on the docket, with a copy of the proposed order attached as an exhibit to the notice.  Additionally, the proposed order shall include a calculation of its damages under the Promissory Note and post-petition interest accrued up to the date of this decision.  A copy of the notice and proposed order shall be served upon counsel for the Debtor and Maria Balaj.

Dated: October 15, 2019
      New York, New York

                                     */s/ Sean H. Lane*
                                    UNITED STATES BANKRUPTCY JUDGE

---

[4] The Court notes that David Balaj brought a counterclaim against Maria Balaj seeking a declaratory judgment that the Promissory Note is valid.  *See* Exh. 11.  But given that the relief sought by David Balaj as to the Promissory Note is essentially the same as that granted today to Puka Capital by the Court, David Balaj's request for a declaratory judgment is moot.

19